Thomas L. EOVALDI, on his behalf and on behalf of a Class consisting of all other First Bank Americard cardholders similarly situated, Plaintiff,

v.

The FIRST NATIONAL BANK OF CHICAGO, Defendant.

No. 71 C 1654.

United States District Court,
N. D. Illinois,
E. D.

Nov. 29, 1972.

Aram Hartunian, Pressman & Hartunian, Chicago, Ill., Irwin Schechtman, Palatine, Ill., Steven Goldman, Thomas L. Eovaldi, Chicago, Ill., for plaintiff.

Joseph DuCoeur, Leslie A. Hodson and Don H. Reuben, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for defendant.

## DECISION and ORDER

McMILLEN, District Judge.

Plaintiff has filed a class action for an alleged violation of the Truth-in-Lending Act (15 U.S.C. § 1637(b)). Defendant failed to send a statement of account to its "First" Bankamericard holders for April 1971, thus allegedly depriving the card-holders of an opportunity to make payments when due, potentially resulting in an additional month's interest. Plaintiff sues on behalf of all card-holders who incurred an additional charge due to the late billing and seeks an injunction designed to avoid a repetition of the failure in the future.

The case comes on to be heard on plaintiff's motion to maintain a class action. All of the requirements of Subsection (a) of Rule 23 appear to be satisfied with the exception of subparagraph (4), that the "representative parties will fairly and adequately protect the interests of the class." Since the named plaintiff is also acting as co-counsel for the class, his interest in legal fees clearly outweighs his interest as a plaintiff and creates a conflict of interest. He cannot therefore be considered a fair and adequate representative of the class. Cf. Shields v. Valley National Bank of Arizona, 56 F.R.D. 448 (W.D.Ariz.1972).

Since there are other attorneys seeking to represent the class in the suit, the conflict should be and can be promptly eliminated, so we will move on to the requirements of subsection (b) of Rule 23. Only one alternative of subsection (b) need be satisfied, and even if one is satisfied, the courts generally exercise some discretion in permitting the action. See Ratner v. Chemical Bank New York Trust Company, 54 F.R.D. 412, 416 (S.D. N.Y.1972).

■ We do not believe this action fulfills subparagraph (b)(1) since a suit by a single plaintiff would not change the statutory standard of conduct for the defendant and would not dispose of or impair the claim of any other prospective plaintiff. We do not consider Zachary v. Chase Manhattan Bank, 52 F.R.D. 532 (S.D.N.Y.1971) to be persuasive on this point in a Truth-in-Lending Act case and, on the contrary, believe subparagraph (b)(1), as well as the other provisions of Rule 23, should be restricted to their literal meanings.

Subsection (b)(2), relating to injunctive or declaratory relief against a recalcitrant defendant, is likewise unsatisfied by the case at bar. The gravamen of this Truth-in-Lending action is for damages, and there is no reason to believe that defendant needs to be ordered to comply with the statute. The single omission on which the complaint is based was due to a technical aberration, according to defendant's uncontroverted affidavit. The drastic remedy provided by Rule 23 should not be invoked merely because the Complaint contains a prayer for injunctive relief, in the absence of a cause of action which would justify it. Cf. Advisory Committee on Rules, 28 U.S.C. Rule 23 (1972 pocket part p. 96). We do not view this as such a case.

■ The final alternative is contained in subparagraph (b)(3). We find that questions of law and fact common to members of the class do predominate, leaving only the question of whether a "class action is superior to other available methods for fair and efficient adjudication of the controversy." Several courts have taken shelter under this provision when confronted with large classes and large potential damages. The leading authority for this approach is Ratner v. Chemical Bank New York Trust Co., *supra*, decided by one of the architects of Rule 23. We reluctantly disagree with Judge Frankel's conclusion that the availability of individual actions for $100 and attorney's fees is a fairer or more efficient way of adjudicating these controversies, and we do not agree that "horrendous, possibly annihilating punishment" is a valid consideration under subparagraph 23(b)(3). The question of fairness has been decided by Congress, and the Court's remaining concern is whether a class action is superior to multitudinous individual actions from the standpoint of efficiency. We believe that it is and that the case at bar is a classic example of the reason for creating Rule 23, and of one of its shortcomings.

The question of efficiency in the case at bar is essentially a question of manageability of the class. The class herein is potentially 170,000 or so holders of Bankamericards who are billed by the defendant bank. Much larger and more difficult class actions have been managed (e. g. Zachary v. Chase Manhattan Bank, *supra* p. 2; In re Ampicillin Antitrust Litigation, 55 F.R.D. 269 (D. D.C. May 9, 1972) and In re Antibiotic Antitrust Actions, 33 F.Supp. 278 (S.D. N.Y.1971)). All of the members of the class herein are ascertainable by name and address from the defendant's records. All of their claims are substantially identical except for unliquidated damages. There is no perceptible difficulty in ascertaining actual damages, and minimum liquidated damages are provided by statute. The most challenging question of damages will be the attorneys fees, and we believe this and the other contested issues can be handled more efficiently and economically for all concerned by means of a class action

rather than by individual suits. We do not understand the alternative of a "test case" as mentioned in Katz v. Carte Blanche Corp., 52 F.R.D. 510 (W.D.Pa. 1971), unless this is intended to suggest a motion for summary judgment.

What bothered Judge Frankel in his *Ratner* decision and several federal judges who have followed it is the disproportionate size of the liquidated damages as compared to the actual damages. One month's interest on most Bankamericards is a very small amount, considerably less than the $100 minimum established by Section 1640(a) of the Act. Conceivably the actual damages in this case could be non-existent, since the individual card-holders were notified in advance that they would not receive a statement for April and were sent a card by which they could have made a payment for that month, according to defendant's affidavit. Liquidated damages, on the other hand, could reach $17,-000,000, plus attorneys' fees.

We therefore believe that the penalty provisions of the Act are punitive and unrelated to actual damages, thus perhaps depriving the defendant of property without due process. The plaintiff's attorneys apparently agree with this conclusion because they have stated in open court that they intend to amend the complaint and sue only for actual damages and attorneys fees. Whether or not this can be done legally and whether any member of the class can be bound by such a waiver remains to be seen. We would allow a class action on condition that such a waiver be attempted, however. Without such a waiver, we would request the parties to brief the question of the constitutionality of the Truth-in-Lending Act's liquidated damage provisions when viewed in the light of a class action.

This case will be called for a status report on Wednesday December 6, 1972 at 10 a. m.