**Richard ANDRUCCI et al., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**GIMBEL BROTHERS, INCORPORATED, Defendant.**

**Civ. A. No. 69–905.**

United States District Court,
W. D. Pennsylvania.

May 8, 1973.

Howard A. Specter, David R. Brown, Litman, Litman, Harris & Specter, P. A., Pittsburgh, Pa., for plaintiffs.

Louis Caplan, Kenneth G. Jackson, David S. Watson, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

OPINION

TEITELBAUM, District Judge.

This is an action which purports to be a class action under the Truth-In-Lend-

ing Act (15 U.S.C. § 1601 et seq.). Presently pending for decision is the plaintiffs' motion to have the class determined to be a proper class and the action proper for a class action. To provide a basis for the decision the parties have entered into a stipulation of facts.

The defendant, Gimbel Brothers, Inc., on July 1, 1969, and for a number of years prior thereto, was engaged in the business of operating a chain of retail department and dry goods stores in various cities of the United States, including stores in and around the City of Pittsburgh, Pennsylvania. The stores in and around Pittsburgh are operated by Gimbel's Pittsburgh Division. In the course of the operation of its business, the defendant regularly extended and offered to extend credit to its customers. In so doing, it was subject to the disclosure requirements of the Truth-In-Lending Act.

All of the representative plaintiffs are consumer customers of the defendant's Pittsburgh Division, and all have, from time to time since July 1, 1969, been extended or offered an extension of credit by the defendant pursuant to its Open End Credit Plan. The class on whose behalf the representative plaintiffs propose to proceed is defined as consisting of all of the defendant's Pittsburgh Division consumer customers to whom credit was extended or offered under the terms of the Open End Credit Plan on or after July 1, 1969 and upon whom a finance charge was imposed.

In Katz v. Carte Blanche Corporation, 52 F.R.D. 510 (D.C.W.D.Pa.1971) I held that with respect to the merits of an action proposed to be maintained as a class action, the only burden of the representative plaintiffs is that of "a minimal demonstration that the complaint is 'sincere' or 'more than frivolous'."[1] The complaint in this action alleges that the defendant violated the Truth-In-Lending

Act, and Regulation Z (12 C.F.R. 226) which was adopted by the Federal Reserve Board pursuant to the Act, in five respects:

"(a) By failing to disclose and set forth its annual percentage rate or rates and the method of computation thereof on the face of its periodic statements in accordance with the requirements of Regulation Z, 12 C.F.R. 226.7(c) (1);

(b) By failing to disclose and express its applicable minimum finance charge in excess of fifty (50) cents in terms of an annual percentage rate in accordance with the requirements of Regulation Z, 12 C.F.R. 226.5(a)(3)(i);

(c) By failing to disclose the amount of the balance to which each annual percentage rate is applicable in accordance with the requirements of Regulation Z, 12 C.F.R. 226.7(b)(6);

(d) By failing to make all required disclosures in a clear and conspicuous manner as required by Regulation Z, 12 C.F.R. 226.6 (a); and

(e) By separating the required disclosures so as to confuse, mislead and obscure or detract attention from the information required to be disclosed as prohibited by Regulation Z, 12 C.F.R. 226.7(c) (4)."

The effective date of the Act was July 1, 1969. Section 226.6(k) of Regulation Z, however, provided for a period of transition from July 1 until, at the latest, December 31, 1969. That section, which is critical to the disposition of this action, since the critical period is the period from July 1 to December 31, 1969, allows that:

"Any creditor who can demonstrate that he has taken bona fide steps, prior

---

1. The total inquiry into the merits suggested in Dolgow v. Anderson, 43 F.R.D. 472 (D.C.E.D.N.Y.1968), rev'd, 438 F.2d 825 (2d Cir. 1970) is to be distinguished.

to July 1, 1969, to obtain printed forms which are necessary to comply with requirements of this Part may, until such forms are received but in no event later than December 31, 1969, utilize existing supplies of printed forms for the purpose of complying with the disclosure requirements of this Part, other than the requirements of paragraph (b) of § 226.9: *Provided*, That such forms are altered or supplemented as necessary to assure that all of the items of information the creditor is required to disclose to the customer are set forth clearly and conspicuously."

It is stipulated that prior to February of 1969 the defendant, in contemplation of both the opening of a new branch store and the passage of the Act, decided to revise the periodic statement which it was then sending to its customers. In late February it submitted the revised periodic statement to its printer and requested that it be ready for use in May of 1969 to coincide with the opening of the new branch store. At about the same time, the defendant sought legal advice as to whether or not the revised statement would be in compliance with the Act. In April it was advised that the revised form would not completely comply with the Act. Accordingly, as was permitted by § 226.6(k), while the defendant used the revised statement which it submitted to its printer in February [2] from approximately May 10, 1969 to approximately October 1, 1969, it supplemented it during the period from July 5, 1969 through the month of September of 1969 with a form [3] ("supplemental form") which was designed to effect complete compliance.[4]

Forming the basis for this action, of course, is the plaintiffs' contention that the defendant's efforts to comply were unsuccessful. I think, however, that they were, on the contrary, eminently successful. In fact, mindful that the obvious intent of Congress was to set standards by which to achieve meaningful "truth-in-lending" and not to deviously set traps by which windfalls could be reaped by fanciful lawyers, I think they were successful enough to warrant a finding, at this stage, that the claims of the plaintiffs' complaint are not "more than frivolous".

The first of the plaintiffs' contentions is that the defendant failed to set forth the annual percentage rate and its method of computation on the face of its periodic statement. Indisputably, it did not. But it was set forth on the supplemental form which it sent with its periodic statement.

It is clear that § 226.7(c)(1) requires that the annual percentage rate "appear on the face of the periodic statement". It is equally clear that § 226.6(k), which allows the required disclosures to be made on supplemental forms during a "transition period", controls during that period. See Kroll v. Cities Service Oil Company, 352 F.Supp. 357 (D.C.N.D.Ill. 1972). Thus any creditor who took bona fide steps prior to July 1, 1969, to obtain forms to comply with the Act may, during that period, use supplemental forms "to assure that all of the items of information the creditor is required to disclose to the customer" are disclosed, so long as they are set forth "clearly and conspicuously". Manifestly, then, the defendant's disclosure of the annual percentage rate on the supplemental form,

2. Attached hereto as Exhibit 1.

3. Attached hereto as Exhibit 2.

4. The representative plaintiffs do not stipulate that the supplemental form was enclosed with each periodic statement sent during the months of July, August and September, and in fact in response to requests for admissions, while most have either admitted or not denied receiving it, one has denied receiving it. The defendant states, however, that it was sent with each periodic statement and, of course, it is only necessary that the required forms be sent.

since the bona fide steps taken by the defendant have been stipulated, was permissible. As to the clarity and conspicuousness with which the disclosure was made, an examination of the form reveals a disclosure which is readily spottable and easily understandable. Therefore the defendant was impeccably in complete compliance with the Act.

The plaintiffs' fifth contention is that the disclosures were "separated so as to confuse or mislead the customer or obscure or detract attention from the information required to be disclosed" in violation of § 226.7(c)(4). The basis for this contention is the stipulation with respect to the practice of the defendant of enclosing advertising flyers along with the periodic statement and the supplemental form which at times may have been stuffed between the statement and the form. The patent absence of either sense or persuasiveness of this contention merits it no comment.

The plaintiffs' fourth claim is that the defendant failed to make "all required disclosures in a clear and conspicuous manner as required by § 226.6(a)" of Regulation Z. That section requires all disclosures mandated by the Act to be in meaningful sequence and in the terminology prescribed. Again, on inspection, the statement and the form unarguably pass muster. Too, the terms "finance charge" and "annual percentage rate" are, as required, printed "more conspicuously than other terminology". The final provision of § 226.6(a), which evidently is that upon which the plaintiffs principally rely, compels all numerical amounts and percentages to be stated in figures, and printed in not less than the equivalent of 10 point type. Although the periodic statement did not state all numerical amounts and percentages in figures, the supplemental form did. And whether or not they were printed in not less than the equivalent of 10 point type is irrelevant since, as observed in Kroll v. Cities Service Oil Company, *supra,* during the transition period that requirement is superseded and the only requirement is that the numerical amounts and percentages be disclosed, in the language of § 226.6(k), "clearly and conspicuously". The supplemental form used by the defendant during the transition period in this action accomplished that with honors.

The second and third of the plaintiffs' claims are also, like the first, fourth and fifth, not "more than frivolous". By the second, the plaintiff contends that the defendant violated § 226.5(a)(3)(i). That section provides for the determination of the applicable annual percentage rate for purposes of its disclosure on the periodic statements. Specifically, it provides that where the finance charge is a minimum which "exceeds 50 cents for a monthly or longer billing cycle", then the annual percentage rate shall be determined by making certain designated computations. Here the defendant determined no such annual percentage rate; nor did it, of course, disclose any such rate in the periodic statements. But that was simply because the finance charge imposed was not in excess of 50 cents. Not only did the supplemental form expressly and definitively state that the minimum finance charge which would be imposed was "50¢", but also the only representative plaintiffs, whose claims by stipulation are typical of those of the class which they seek to represent, who were charged a minimum (Richard Felser and Arthur Lawrence) were charged 50 cents. And, significantly, the proposed class, by stipulation, includes only those upon whom a finance charge was imposed. Clearly, then, (and conspicuously) the provisions of § 226.5(a)(3)(i) were not applicable to the defendant.

By their third claim the plaintiffs allege that the defendant's disclosures failed to satisfy the requirements of § 226.7(b)(6) of Regulation Z in that they did not disclose the balance to which each annual percentage rate was applicable. Indeed, "where there is more than one

rate" that section requires the disclosure of "the amount of the balance to which each rate is applicable". Here, however, there was only one apparent rate. Presumably this contention relates to the second by which the plaintiff attempted to conjure up a rate regarding finance charges which exceeded 50 cents. Of course, if the second claim is the foundation for the third, the third fails in tandem with the second, to withstand the test of "more than frivolous".

In sum, considering all of the plaintiffs' claims, I conclude that none are "more than frivolous". Consequently, the first hurdle having proved to have been insurmountable, an Order will be entered denying the plaintiffs' motion to have this action determined to be maintainable as a class action.

GIMBELS

☐ Mellon Square    ☐ Eastland

☐ North Hills    ☐ South Hills

☐ Monroeville Mall

BILLING DATE        ACCOUNT NUMBER

PLEASE DETACH AND RETURN THIS STUB

| AMOUNT ENCLOSED |
| --- |
| |

FOR SHOPPING EASE, PLEASE CARRY YOUR CREDIT CARD; GIVE ACCOUNT NUMBER ON CREDIT CARD WHEN SHOPPING BY MAIL OR PHONE.

Payments and Credits received after the billing date shown above will appear on your next statement.

IF YOU HAVE ANY QUESTIONS ABOUT YOUR BILL, PLEASE SPECIFY DATE AND TRANSACTION NUMBER OF ITEM

| DATE | STORE | TRANSACTION NUMBER | DEPT. NO. | TRANSACTION DESCRIPTION | AMOUNT OF PURCHASES | PAYMENTS RETURNS AND OTHER CREDITS |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | |

| PREVIOUS BALANCE | PLUS· FINANCE CHARGE | MINUS TOTAL CREDITS | PLUS TOTAL PURCHASES | YOU MAY PAY | | PAYMENT DUE BY | AMOUNT OVERDUE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | NEW BALANCE | OR MINIMUM AMOUNT DUE | | |

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION

THANK YOU FOR SHOPPING AT GIMBELS     325·10·505

EXHIBIT 1
FRONT

[A7527]

GIMBELS CHARGE ACCOUNT
with its added measure of buying freedom . . .
so flexible it serves every credit need.

When the family needs change-of-season clothes, when the house needs refurnishing, at Holiday times, or when a Gimbels special sales event makes unusual savings possible . . . that's when you appreciate your Gimbels Charge Account with its distinctive Option Feature. You can stretch your payments whenever you choose . . . the option is entirely yours!

*You may pay only the 'Minimum Amount Due' indicated on the other side of the statement. Of course, you may pay more than this amount or the entire balance of your bill at any time . . . and save on FINANCE CHARGES.*

| IF YOUR BALANCE IS: | YOUR MINIMUM AMOUNT DUE IS: |
|---|---|
| $ 0 to $ 10 | In Full |
| $ 10 to $100 | $10 |
| $100 to $150 | $15 |
| $150 to $200 | $20 |
| $200 to $250 | $25 |
| $250 to $300 | $30 |
| $300 to $350 | $35 |
| $350 to $400 | $40 |
| $400 to $450 | $45 |
| $450 to $500 | $50 |

Over $500—$50 plus the
amount of balance over $500.

No FINANCE CHARGE if balance is paid within 30 days from billing date.

FEDERAL TRUTH IN LENDING ACT

The FINANCE CHARGE herein contained does not exceed an ANNUAL PERCENTAGE RATE of fifteen percent based on the previous balance except that a minimum FINANCE CHARGE of seventy cents (70¢) per month may be made. The previous balance does not include any transactions shown on this month's bill such as purchases, payments or other credits.

PENNSYLVANIA GOODS AND SERVICES INSTALLMENT SALES ACT

"The service charge herein contained does not exceed the equivalent of fifteen percent simple interest per annum on the unpaid balance except that a minimum service charge of seventy cents (70¢) per month may be made."

## EXHIBIT 1
### BACK

[A7525]

## THERE'S A GIMBELS CREDIT PLAN FOR EVERY CREDIT NEED

1. Charge Account that gives you the option to extend payments
2. Home Budget Account for larger purchases with longer extended payments.
3. Credit Certificates that allow you to budget purchases and repay in equal monthly payments

Every month you receive a bill listing each purchase, payment and credit. A summary line at the bottom of your bill shows the new balance which you may elect to pay in full and the "Minimum Amount Due" which you may choose to pay if you desire to extend payments.

Naturally, you may pay more than the "Minimum Amount Due" or the entire new balance at any time. If the balance is paid in full before the next billing date, there is no FINANCE CHARGE.

If the new balance is not paid in full before the next billing date, a FINANCE CHARGE will be added to it. The FINANCE CHARGE is computed at the periodic rate of 1¼% per month (or at a minimum charge of 50¢) which is the ANNUAL PERCENTAGE RATE of 15%.

### EXHIBIT 2

[A7526]