David B. LINN, Individually and on be-
half of all other persons similarly
situated, Plaintiffs,

v.

TARGET STORES, INC., a Minnesota
corporation, Defendant.

No. 4–73 Civ. 137.

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 5, 1973.

**470**

Schiefelbein & Greenberg by Alan G. Greenberg, Minneapolis, Minn., for plaintiff.

Faegre & Benson by James B. Loken, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

This is an action brought under the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. (1968) [1] against Target Stores, a Minnesota retail discount merchandising corporation operating numerous stores within the State of Minnesota. The defendant is a wholly owned subsidiary of Dayton-Hudson Corporation which operates department stores in Minnesota and elsewhere under the name "Dayton's." The Dayton stores have operated for years in Minnesota while the Target discount stores began

relatively recently. For many years Dayton's has offered its customers credit service using credit cards. It appears that there is no contention in this case that Dayton's itself did not comply with Truth in Lending requirements. However, the plaintiff here asserts that Target did not comply with those requirements when on August 24, 1972 it began to honor charges made by the use of the Dayton's credit card. There were newspaper and other media announcements to this effect. The Dayton's credit customers were allowed to use their cards at Target under the same terms and conditions as at Dayton's. Billing however was separate from the Dayton's billing. Defendant asserts that various actions were undertaken by Target to assure that its credit customers were fully apprised of the information required by the Truth in Lending Act. Such contention or contentions however go to the merits. The ultimate disposition of this motion as to whether a class action status should be granted makes it unnecessary to decide whether these activities took place and how effective they were. Suffice it to say that Target made an effort to notify its customers that the Dayton's card would be honored at Target on the same terms as at Dayton's.

Plaintiff Linn is a holder of a Dayton's credit card and alleges that on December 21, 1972 he made a credit purchase in the amount of $15.87 at a Target store. The complaint alleges that prior to this transaction defendant did not in any way notify plaintiff of the disclosure information required by the Act. And the complaint further alleges that plaintiff has not yet been apprised of this information. Ultimately plaintiff was charged a finance charge on this transaction in February 1973 of $.50—the minimum finance charge.[2]

---

1. Jurisdiction is posited on 15 U.S.C. § 1640(e) (1968). See Ratner v. Chemical Bank of New York Trust Co., 54 F.R.D. 412 (S.D.N.Y.1972); Richmond v. Railey's Appliance Center, 59 F.R.D. 641 (E.D.Va. 1973).

2. Apparently plaintiff had not paid his account within 30 days and by February 1973 it became a "revolving" account to which an interest charge is added monthly.

On these facts plaintiff has fashioned a claim under the Truth in Lending Act. Plaintiff alleges that defendant has failed to comply with the disclosure requirements of 15 U.S.C. § 1637(a). That section requires that "before opening any account", the seller must apprise the prospective buyer of various conditions on which the credit will be offered. Plaintiff claims that although Dayton-Hudson had complied with these requirements the fact that Dayton's card holders were not told, if in fact they were not, that the same terms would be applied on credit purchases at Target means that Target offered credit without complying with § 1637(a). If a violation of this section was proved 15 U.S.C. § 1640(a)(1) would allow a damage award of "twice the amount of the finance charge . . . except that liability under this paragraph shall not be less than $100 nor greater than $1,000. 15 U.S.C. § 1640(a)(2) further would allow "reasonable attorney's fees as determined by the court." Plaintiff has asked for awards under both these sections.

Plaintiff pleads that there is a class of persons who have made credit purchases at Target without having had proper disclosure, and within this class there is a subclass which consists of those card holders on whom actually was imposed a finance charge. Plaintiff himself is a member of both groups and argues he "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). No other card holder has joined plaintiff in this action.

By affidavit, defendant indicates that the class potentially includes more than 208,000 people. An award of $100 to each of them would create a liability of over twenty million dollars. Also by affidavit, defendant indicates that this award would be slightly in excess of the total credit sales made by defendant during the period in question from August 1972 until March 7, 1973 the date of commencement of this action.

■ The motion for class determination is made solely under Fed.R.Civ.P. 23(b)(3). Before this court can find a class under a subsection of Rule 23(b) it must be satisfied the root requirements of Rule 23(a) are present. The court is satisfied that the standards of Rule 23(a) are met here. The size of the potential class makes joinder clearly impracticable. Common questions of law and fact among the class are present. The claims and defenses of the representative appear typical of those of the class. Plaintiff apparently has fulfilled this requirement by styling a class which simply resembles his situation. Finally, the representative may fairly and adequately protect the interests of the class.[3]

■ Next the court must satisfy itself that the requirements of Rule 23(b)(3) are present. The court is mindful of the admonition of the Advisory Committee when dealing with Rule 23(b)(3):

> In the situations to which this subdivision relates, class action treatment is not as clearly called for as in those described above [Rule 23(b)(2) and other sections], but it may nevertheless be convenient and desirable depending upon the particular facts.

Notes of the Advisory Committee on Rules, 28 U.S.C.A. Rule 23 at 299 (1972). The first requirement in Rule 23(b)(3) regards predominence of questions of law and fact. The court is of

---

3. Defendant argues that plaintiff would not be an adequate representative because, *inter alia*, plaintiff has not offered to pay notice costs. Recent case law seems to indicate this is a proper consideration for a court inquiring into adequacy of the representative. *E. g.*, Eisen v. Carlisle & Jacquelin, 479 F.

2d 1005, 1009 (2d Cir. 1973). In view of the court's disposition of this motion on other grounds a direct ruling on adequacy is unnecessary. *Cf.* Goldman v. First Natl. Bank of Chicago, 56 F.R.D. 587, 589 (N.D. Ill.1972).

the opinion that common questions of *law* do predominate. The issue of whether defendant has violated the Truth in Lending Act in its actions as applied to all Dayton card holders is the central question of law. The issue of whether any breach was in good faith and thus excusable, 15 U.S.C. § 1640(c), is certainly common to the class.

■■ However, the court is of the opinion that common questions of *fact* do not predominate. The Rule does not demand that both predominate, however, where there are differences among class members as to questions of fact the likelihood that the class is manageable is decreased. Rule 23(b)(3)(D). Here for each class member the question must arise whether that person received actual notice of the required disclosure information. Plaintiff has not contradicted that this effort took place. The effort, although arguably belated, might or might not be found at a trial so great as to make it difficult for any card holder to avoid exposure to the information which is what the Act requires. Under this circumstance the defendant may argue it should have the right to question any class member as to whether the person received actual notice. These are questions "affecting only individual members" and to endeavor to make such an inquiry with a class of some 208,000 would be a monumental task. It alone might make this action unmanageable.

■ The second requirement of Rule 23(b)(3) is that the court must find the class action "superior to other available methods for the fair and efficient adjudication of the controversy." It should be noted that this requires *superiority* and not simply that the class action device be *adequate*. This court finds this requirement has not been met and the motion for class determination, therefore, must be denied.

Applying the penalties allowed under 15 U.S.C. § 1640 in the class action context would create an unnecessarily drastic remedy. The purposes for which the Act was intended, to assure that consumers are informed of the conditions under which credit is extended, may be fulfilled by bringing individual actions. The admonitory effect of the mere existence of the penalty provisions aids consumers. In view of this the court may not lightly infer the class treatment with its potentially devastating effect on defendants, is "superior" to other devices. In the leading case of Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y.1972), Judge Frankel discussed this problem:

> Students of the Rule have been led generally to recognize that its broad and open-ended terms call for the exercise of some considerable discretion of a pragmatic nature. Appealing to that kind of judgment, defendant points out that (1) the incentive of class-action benefits is unnecessary in view of the Act's provisions for a $100 minimum recovery and payment of costs and a reasonable fee for counsel; and (2) the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act. These points are cogent and persuasive. They are summarized compendiously in the overall conclusion stated earlier: the allowance of this as a class action is essentially inconsistent with the specific remedy supplied by Congress and employed by plaintiff in this case. It is not fairly possible in the circumstances of this case to find the (b)(3) form of class action "superior to" this specifically "available" [method] for the fair and efficient adjudication of the controversy.

54 F.R.D. at 416. Putting it more bluntly Judge Frankel said:

> Briefly, if perhaps too broadly, stated, the reasons against maintenance of this as a class action are:
>
> (1) there is no affirmative need or justification for such a proceeding in the actual circumstances of the case; and
>
> (2) the allowance of thousands of minimum recoveries like plaintiff's would carry to an absurd and stultifying extreme the specific and essentially inconsistent remedy Congress prescribed as the means of private enforcement.

54 F.R.D. at 414. Judge Frankel in essence soundly based his decision not so much on the technical application of Rule 23, but in looking at possible results he attempted to interpret Congressional intent in adopting and passing the Truth in Lending Act, which itself makes no reference to class actions. A subsequent court delineated the *Ratner ratio decidendi* in this way:

> There is no need here to decide that a class suit is never appropriate in such a case. The precise holding of Ratner, which is unquestionably sound, was that where the alleged violations of the Act are "at most technical and debatable," and where the size of the proposed class and the minimum $100 recovery portend "a horrendous, possibly annihilating punishment" to the defendant, "unrelated to any damage to the purported class or to any benefit to defendant," 54 F.R.D. at 416, the class action should not be confirmed.

Kroll v. Cities Service Oil Co., 352 F. Supp. 357, 360 (N.D.Ill.1972). Although the potential loss to the defendant here may not be annihilating, it would be huge and unrelated to any actual loss to the class or benefit to the defendant. On such facts the court cannot find a class action superior to other methods of remedying possible loss to the class. One court has stated that if one views the penalty provisions of the Act as punitive, the damages, totally unrelated to actual damages, such would be so great that the Act's operation may deprive defendants of property without due process. Eovaldi v. First Natl Bank of Chicago, 57 F.R.D. 545, 548 (N.D.Ill.1972). The Truth in Lending Act specifically exempts credit advertising from its penalties; it exempts creditors who correct their errors within fifteen days—these are important for purpose of this motion only in construing Congressional intent. Such exemptions as are granted normally would not occur where the intent was to punish a person for a violation of law. It appears from the legislative history that the goal of the Act was to aid consumers in making intelligent choices in shopping for credit:

> . . . the bill reported from the committee will substantially assist in facilitating the intelligent use of credit. However, in the last analysis the best safeguard for the consumer must be his own informed and judicious judgment.

Views of Congressman Hanna, 1968 United States Code and Congressional News, Vol. 2 at p. 2005. It would make eminent sense, if it were the intention of the drafters for the Act to be a class action cornucopia, to mention that fact at some point.[4] Also, the bill provides for administrative enforcement, 15 U.S. C. § 1604, by the Federal Reserve Board. This may be another reason why the applicability of the class action device should not be lightly assumed. It is clear that the Congress did not want to make disclosure requirements so difficult that credit would be substantially

---

4. In one other case the court noted that there is no language in the history of the Act which indicates that Congress intended to preclude class actions in TIL cases. Kristiansen v. John Mullins & Sons, Inc., 59 F.R.D. 99, 103 (S.D.N.Y.1973).

impeded.[5] The use of the class action device here may well do this because of the tremendous damages the $100 minimum recovery would require.

The $100 minimum recovery supplemented by attorneys' fees seems, to this court, to imply that separate actions should be favored here. Ignoring for a moment the possibility that this might be a violation of due process where there are no actual damages, 57 F.R.D. at 548 *supra*, it must be admitted that this is some impetus to bring suit. If a seller knows it is violating the Act this provides a prod to settlement.

At the hearing the possibility of plaintiff agreeing to seek only double the amount of interest collected was discussed. The court is aware that in one other case a class was allowed on the condition the plaintiff waive the $100 minimum, Goldman v. First National Bank of Chicago, 56 F.R.D. 587 (N.D. Ill.1972), but since the plaintiff made no offer to accept any lesser amount the court need not decide whether the Act allows such an action.

This court here is simply adopting the holding and reasoning of Judge Frankel's decision in *Ratner* and rejecting the few decisions which have disagreed with that holding. In the *Goldman* case the court stated that it was "compelled to do no more than embrace wholeheartedly the teachings of Judge Frankel . . . ." 56 F.R.D. at 593. Many other cases have followed *Ratner*, e. g., Kriger v. European Health Spa, Inc., of Milwaukee, Wis., 56 F.R.D. 104 (E.D. Wis.1972); Wilcox v. Commerce Bank,

55 F.R.D. 134 (D.Kan.1972); Rogers v. Coburn Finance Corp. of DeKalb, 54 F. R.D. 417 (N.D.Ga.1972); Shields v. First National Bank, 56 F.R.D. 442 (D. Ariz.1972); Shields v. Valley National Bank, 56 F.R.D. 448 (D.Ariz.1971); Kenney v. Landis Financial Group, Inc., 349 F.Supp. 939 (N.D.Iowa 1972); Rodriguez v. Family Publications Service, Inc., 57 F.R.D. 189 (C.D.Cal.1972); Garza v. Chicago Health Clubs, Inc., 56 F.R.D. 548 (N.D.Ill.1972); Kroll v. Cities Service Oil Co., 352 F.Supp. 357 (N. D.Ill.1972); Kenney v. Landis Financial Group, Inc., 349 F.Supp. 939 (N.D.Ia. 1972); Buford v. American Finance Co., 333 F.Supp. 1243 (N.D.Ga.1971). The cases which have allowed class actions under the Truth in Lending Act, for the most part, preceded *Ratner*, e. g., Katz v. Carte Blanche, 53 F.R.D. 539 (W.D. Pa.1971); Joseph v. Norman's Health Club, Inc., 336 F.Supp. 307 (E.D.Mo. 1971).

Perhaps the leading case allowing a class action under the Truth in Lending Act is Katz v. Carte Blanche, 52 F.R.D. 510, 53 F.R.D. 539 (W.D.Pa.1971). There Judge Teitelbaum[6] found a class action proper. This was in 1971 and it does not seem unfair to say that the standards for manageability have come a long way since then. *See* Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973). And the *Katz* case itself has been criticized as not adequately analyzing the "relationship between the relief provided in Section 130(a) and the 'superior' requirement of subdivision (b)(3)". Rodriguez v. Family Publications Service, Inc., 57 F.R.D. 189, 194

---

5. 1968 United States Code and Congressional News, Vol. 2 at p. 2011.

6. In a very recent case Judge Teitelbaum shows that he will not always allow a class in Truth in Lending Actions. Andrucci v. Gimbel Brothers, Inc., 59 F.R.D. 552 (W.D. Pa.1973). There the court, citing *Katz*, held that the initial question must be whether a claim preferred as a class action is "sincere" or "more than frivolous". It further held that a claim not unlike that in the present case was frivolous and that the defendant had taken remedial action which allowed it the good faith defense. This court need not inquire into the merits because of the decision it now makes on the motion.

(C.D.Cal.1972). Even when *Katz* was written the court agreed that it was a close question, 53 F.R.D. 544 at n. 11, and since that time the court's theory on notice has been rejected. Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973). Without this notice theory it would not be difficult to conclude that the *Katz* court would have gone the other way and found that action not manageable.

Plaintiff cites a more recent case to support class determination. Kristiansen v. John Mullins & Sons, Inc., 59 F.R.D. 99 (E.D.N.Y.1973). That case involved a retail furniture chain store defendant and there was no showing that there were the multitude of plaintiffs as in this case. Also, by its own terms the order allowing a class was merely temporary and the court noted it may change the ruling. 59 F.R.D. at 106. Finally, there did not appear to be any problem with notice in that case. Here the plaintiff has not volunteered to pay for notice, though of course such could be made a condition were a class action allowed. Here it cannot be said that plaintiff has carried his burden of showing that the action is manageable. Clark v. Thompson, 206 F.Supp. 539 (D. Miss.1962), aff'd 313 F.2d 637 (5th Cir.) cert. denied 375 U.S. 951, 84 S.Ct. 440, 11 L.Ed.2d 312 (1963).

This court concludes that it would be unwise on these facts to use its discretion to allow a class action. City of Kansas City v. Williams, 205 F.2d 47 (8th Cir.) cert. denied 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed. 351 (1953). Because of the size of the class, the notice problem, the inherent tension between Rule 23 and the Truth in Lending Act penalties the action is unmanageable and thus a class action is not superior to other remedies. The motion for determination as a class status is denied.

A separate order has been entered.