**Michael RATNER, for himself and all others similarly situated, Plaintiff,**

**v.**

**CHEMICAL BANK NEW YORK TRUST COMPANY, Defendant.**

**No. 69 Civ. 4195.**

United States District Court, S. D. New York.

Feb. 14, 1972.

See, also, 329 F.Supp. 270.

Jack Greenberg, Eric Schnapper, New York City, for plaintiff.

Cravath, Swaine & Moore, New York City, for defendant; John R. Hupper, V. Thomas Fryman, Jr., New York City, of counsel.

## OPINION

FRANKEL, District Judge.

In this action, authorized by § 130(e) of the Truth in Lending Act of 1968 (the "Act"),[1] 15 U.S.C. § 1640(e), plaintiff, holder of a Master Charge credit card, has sued to redress an asserted violation of the Act by defendant—namely, the failure to show a "nominal annual percentage rate" on a periodic statement reporting an outstanding principal balance but no interest charge yet accrued. Plaintiff undertook to sue for himself and as representative of other debtors similarly situated. Defendant moved to dismiss; plaintiff moved for summary judgment; and it was agreed that these motions should be decided before considering whether the suit would be held properly maintainable as a class action under F.R.Civ.P. 23. With the assistance of extensive briefs and argument, the court granted plaintiff's motion for summary judgment, holding that the datum omitted from the periodic statement was one required by § 127(b) (5) of the Act. The opinion reaching that result is reported at 329 F.Supp. 270, and the matters there outlined will be repeated here only to the extent necessary. The time has come now to decide whether the suit may be maintained as a class action. The court concludes that it may not.

### I.

The parties, having ranged broadly in the learned arguments characterizing the conduct of this case, tend in their briefs to propose sweeping pronouncements as to whether class actions under Rule 23 must always or may never be deemed proper where the claim rests upon § 130 of the Truth in Lending Act. The court, for this *nisi prius* venture into largely unexplored terrain, will rule less heroically, only upon the specific case at hand. For this molecular purpose the factors deemed pertinent are these:

(1) The action is brought under the special and particular authorization of the Act's § 130(e), 15 U.S.C. § 1640(e), wherein Congress created "a species of 'private attorney general' to participate prominently in enforcement." 329 F. Supp. at 280.

(2) The substantive liability asserted (successfully in this court) by plaintiff under § 130(a) includes minimum damages of $100, plus costs and a reasonable attorney's fee, without proof of any actual damages whatever.

(3) Upon the undisputed facts of this case, it seems fair to conclude that plaintiff suffered no damages at all or that, at most, he may be supposed to have been damaged in some amount representing a small fraction of $100.[2]

---

1. I.e., Title I of the Consumer Credit Protection Act of May 29, 1968, 82 Stat. 146.

2. Plaintiff's theory, it may be recalled, is that the "nominal annual percentage rate" should have been shown so that plaintiff

(4) Both sides estimate that there may be as many as 130,000 Master Charge card holders who could have asserted the claim upon which plaintiff brought this suit. At the minimum rate of $100 apiece, this class would be entitled to a sum in the neighborhood of $13,000,000.[3]

(5) No other member of the proposed class has evinced an interest in the lawsuit or brought a similar suit elsewhere, and the one-year limitation period in 15 U.S.C. § 1640(e) has long since expired.[4]

(6) Defendant, since December 1969, has been giving upon its periodic statements the annual percentage rate plaintiff claims (and this court has held) to be required, though this practice came about through inadvertence rather than acceptance of plaintiff's legal contentions. See *id.* at 279.

(7) It has been agreed between the parties (with defendant reserving, of course, its contention that the substantive ruling for plaintiff is erroneous) that if plaintiff prevails in the end, he will be entitled to approximately $20,000 attorney's fees as well as the minimum statutory recovery of $100.

### II.

Briefly, if perhaps too broadly, stated, the reasons against maintenance of this as a class action are:

(1) there is no affirmative need or justification for such a proceeding in the actual circumstances of the case; and

(2) the allowance of thousands of minimum recoveries like plaintiff's would carry to an absurd and stultifying extreme the specific and essentially inconsistent remedy Congress precribed as the means of private enforcement.

Moving from those broad propositions, we note briefly some of the more detailed grounds for denying the motion to hold this a class action.

Plaintiff urges first that his suit may be maintained as a class action under subdivision (b) (1) of Rule 23. The pertinent language of the Rule is:

"* * * An action may be maintained as a class action if the prereq-

---

(and others like him) could compare competing interest rates and make an informed choice. Assuming the rate (18%) had been shown, and assuming plaintiff had elected to borrow elsewhere, and assuming he could have borrowed at 6%, the difference in annual percentage rate would have been 12%, or, for the one month affected by the omission, 1%. The principal amount affected by the rate was a new indebtedness of $191.58. See 329 F. Supp. at 274. The difference in interest, even on these excessively favorable assumptions, would have been less than $2. More realistically, of course, consumer credit of the kind in question comes generally at a rate very like 18% per annum.

3. The figures as to membership in, and recovery by, the putative class would vary slightly should some of the alleged members be found to have used the credit extended by defendant for "business or commercial purposes." Under § 104 of the Act, 15 U.S.C. § 1603(1), extensions of credit for such purposes are exempted from coverage.

4. Plaintiff claims that despite the expiration of the one-year limitation, the "130,000 individual rights of action * * * have not been lost, [because] [i]t is well established that where a class action is denied the putative class members have a right to intervene which relates back to the filing of the action." Plaintiff's Memorandum at 12 n. 3. At most, however, the authority cited by plaintiff suggests that the purported class members might be entitled to submit proof that they had not brought individual actions in reliance upon the pendency of the attempted class action. See Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 460–461 (E.D.Pa.1968). It seems likely that few class members here could show such reliance. In any event, there is no need to seek a firm view on the thorny questions thus stirred. The main force of the point in the text is that the plaintiff is alone among 130,000 proposed class members in evidencing concretely an interest in the disputed subject of the lawsuit.

uisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests * * *."

So far as clause (A) is invoked, defendant understandably and soundly rejects plaintiff's concern that the future might subject it to "incompatible standards of conduct." It is a real, if accidental, fact that defendant has for some time been making the disclosures plaintiff has demanded. There is no suggestion of an intention to do otherwise—at least until or unless there is a final decision reversing ours on the merits. And there is no suggestion that some perverse plaintiff might sue (though none has) to compel *less* disclosure than defendant is now supplying. The prospect of "varying adjudications" is in a word imaginary.[5]

Clause (B) has even less plausibility for plaintiff's purposes. Nothing has happened or can happen in the foreseeable course of this lawsuit that could be "dispositive of the interests of the other members not parties * * * or substantially impair or impede their ability to protect their interests * * *."[6]

If subdivision (b) (1) is held unavailing, plaintiff relies alternatively upon (b) (3), a more hopeful possibility at which we are now arrived. The pertinent language of this subdivision says there may be a class action if "the prerequisites of subdivision (a) are satisfied, and in addition:"

"the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation

---

5. Since the observations in the text seem sufficient for clause (A), the court need not and does not reach the broader defense argument, supported by scholarly authority, that this provision was not meant as a vehicle for class claims asserting the kind of monetary liability here in question. See Travers & Landers, The Consumer Class Action, 18 Kan.L.Rev. 811, 823–24 (1970); Comment, Rule 23: Categories of Subsection (b), 10 B.C.Ind. & Com.L. Rev. 539, 540–42 (1968); Note, Federal Rules of Civil Procedure: Rule 23, The Class Action Device and its Utilization, 22 U.Fla.L.Rev. 631, 636 (1970); Note, Proposed Rule 23: Class Actions Reclassified, 51 Va.L.Rev. 629, 646–47 (1965).

6. The court is proceeding, of course, upon the concrete situation before it, which includes the fact that plaintiff has been held entitled to prevail upon the merits of his individual claim. This is not the "normal" course of events; the more familiar case is one where the class-action motion is decided before there is any—or anything more than a tentative—determination touching the merits. Cf. Dolgow v. Anderson, 43 F.R.D. 472, 501–502 (E.D.N.Y.1968). It remains our duty and our limited function to deal with the concrete case as it stands. This is not to say that a different ruling on the merits might—or may yet—require a different result on the issue of class action *vel non.* The question is merely left open.

of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Students of the Rule have been led generally to recognize that its broad and open-ended terms call for the exercise of some considerable discretion of a pragmatic nature. Appealing to that kind of judgment, defendant points out that (1) the incentive of class-action benefits is unnecessary in view of the Act's provisions for a $100 minimum recovery and payment of costs and a reasonable fee for counsel; and (2) the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act. These points are cogent and persuasive. They are summarized compendiously in the overall conclusion stated earlier: the allowance of this as a class action is essentially inconsistent with the specific remedy supplied by Congress and employed by plaintiff in this case. It is not fairly possible in the circumstances of this case to find the (b) (3) form of class action "superior to" this specifically "available [method] for the fair and efficient adjudication of the controversy." [7]

The court rules, then, that this action may not be prosecuted for a class. It follows that the case is ended at this level and ready for appeal. The parties (having forecast that this is likely to be manageable) should formulate and submit a judgment embodying the court's rulings, awarding plaintiff the sum of $100 plus $20,000 attorney's fees and costs as agreed upon. Failing agreement, the parties will submit proposed forms of judgment on notice.

---

7. Plaintiff points out that other kinds of statutory proceedings, including private antitrust suits for treble damages, have been held suitable for class treatment under (b) (3). But such questions are not answerable globally once for all; for example, some antitrust cases may qualify while others do not. See 3B Moore's Federal Practice ¶ 23.01 [10.-3], at 23–30, ¶ 23.45 [3], at 23–810 (2d ed. 1969). Moreover, treble damages are significantly different from $100 recoveries on a huge scale for claimants unlikely to be able to show any actual damages at all. A conceivable alternative to a class of claimants seeking the $100 minimum would be a class of card holders (other than, but represented by, the plaintiff before us) who could prove actual damages from the omission in issue, awarding each only the amount thus proved. Cf. Dole, Private Enforcement of Consumer Credit Legislation, 26 Bus.Law 915, 918 (1971). This alternative would meet defendant's objection that recovery of the $100 minimum by each member of the class, without any participation in the lawsuit or proof of damages, would impose a penalty not intended by Congress and possibly raising constitutional problems. However, plaintiff and defendant agree that such a class of conceivably limited claimants appears to be precluded by § 130 of the Act, 15 U.S.C. § 1640(a) (1), which states that "the liability * * * shall not be less than $100." The court is not required to endorse that conclusion, agreed or not. But the point is substantial, and it may sufficiently explain what seems dispositive for the court in any event—that plaintiff does not seek to represent a class of plaintiffs seeking only actual damages.

Another hypothetical explored at oral argument bears brief mention. Cases may arise (some are said to exist elsewhere already) where a large class of plaintiffs is made up of individuals who have suffered claimed damages exceeding the $100 minimum. Having noted this much, it seems sufficient to say cases of that sort might be found to differ decisively from the present one.