**Rita ALSUP et al., Plaintiffs,**

v.

**MONTGOMERY WARD & COMPANY, Defendant.**

**John E. MULLEN, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**MONTGOMERY WARD AND COMPANY, INCORPORATED, Defendant.**

**Nos. C–71–264, C–71–1610.**

United States District Court, N. D. California.

Nov. 17, 1972.

Barry R. Hirschfield, Oakland, Cal., Dennis T. Gary, Gary & Nielsen, Ryan & Pisor, San Francisco, Cal., for plaintiffs.

Richard L. Goff, Gary L. Fontana, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant.

## MEMORANDUM OPINION AND ORDER

RENFREW, District Judge.

In two related cases plaintiffs have moved the Court for an order that each may be maintained as a class action. In Alsup et al. v. Montgomery Ward & Company (*Alsup*), plaintiffs, holders of revolving credit card accounts with defendant, sue on behalf of themselves and approximately 200,000 other credit customers of defendant located in this District. In Mullen et al. v. Montgomery Ward and Company, Incorporated (*Mullen*), plaintiff, also a holder of a revolving credit card account with defendant, sues on behalf of himself and an estimated 5 to 8 million other credit customers throughout the United States. Plaintiffs charge that defendant made

an inadequate disclosure of the method used by it in computing finance charges in violation of the Truth in Lending Act of 1968 (Act), 15 U.S.C. § 1601 et seq. and the Federal Reserve Board Regulations, 12 C.F.R. § 226 promulgated thereunder. Specifically plaintiffs claim that defendant led them and other revolving credit card customers to believe that payments on account during the periodic billing cycle would reduce the periodic finance charges, whereas in fact the finance charges for the billing cycle were computed at the beginning of the billing cycle. During portions of the relevant time period defendant's credit card applications and billing statements stated that finance charges were computed "on the previous month's ending balance * * * which does not include * * * current month's charges and credits." Plaintiffs urge that this language is ambiguous and therefore misleading in that finance charges are in fact computed on one of sixteen different billing cycles rather than on a calendar month and that the word "credit" is not ordinarily understood to include payments. The merits of plaintiffs' claims are not before the Court and no determination thereon is necessary in order to decide these motions.[1] The parties through their respective attorneys of record have submitted to the Court the issue whether the suits may be maintained as class actions based upon the pleadings, motions, memoranda, affidavits, and exhibits filed herein. The Court concludes that neither action may be maintained as a class action.

Before a class action may be maintained under Rule 23 of the Federal Rules of Civil Procedure, plaintiffs must first meet the prerequisites of Rule 23(a):

"(a) One or more members of a class may sue or be sued as represent-

ative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The proposed class in each action is so numerous that joinder of all members would be impracticable. It is also obvious from the pleadings that there are questions of law common to each class, and that the claims of the representative parties in each action are typical of the claims of the alleged class. For the purposes of this motion, the Court assumes the ability of plaintiffs in each action fairly and adequately to represent the class, but, in light of the decision of the Court, this issue is not specifically ruled upon.

Once the requirements of Rule 23(a) have been met, a class action must meet at least one of the requirements set forth in Rule 23(b):

"(b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other mem-

---

1. It should be noted, however, that the Federal Trade Commission, the agency charged with enforcement of the Truth in Lending Act, after an extensive investigation concluded that the language complained of herein complied with the pertinent regulations.

bers not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

In *Alsup* plaintiffs contend that the proposed class qualifies only under subdivision (b)(3). However, in *Mullen* plaintiff urges that the class qualifies under all three subdivisions. Therefore, it is necessary that each subdivision be analyzed.

While it is undisputed that subdivision (b)(1)(A) was drafted to protect a defendant where different parties were attempting to impose different standards of conduct upon him,[2] there is a split in the authorities whether the maintenance of a number of separate actions under the instant facts would sub-

ject defendant to inconsistent or varying adjudications.

In Zachary v. Chase Manhattan Bank, 52 F.R.D. 532 (S.D.N.Y.1971), a holder of a "Uni-Card" brought a class action on behalf of himself and all other card holders, charging that the class had been charged interest in excess of that permitted by state law. The Court denied defendant's motion to disallow the maintenance of the action as a class stating at 534:

"In the event plaintiff is able to satisfy Rule 23(a), plaintiff's action is maintainable as a class action under Rule 23(b)(1). The prosecution of separate actions by individual members of the class could lead to inconsistent results with respect to other members of the class (Rule 23(b)(1) (A)) since the finance charge exacted by defendant is either legal or it is illegal as to all members. For the same reason, an adjudication with respect to plaintiff would be, as a practical matter, dispositive of the interests of the other class members (Rule 23(b) (1)(B))."

However, in Ratner v. Chemical Bank, 54 F.R.D. 412 (S.D.N.Y.1972) Judge Frankel concluded that there is no danger of inconsistent results in a purported class action under the Truth in Lending Act. In *Ratner*, plaintiff sought to represent 130,000 Master Charge credit card holders, charging a violation of the Truth in Lending Act. With reference to the possibility of inconsistent determinations, Judge Frankel observed at 415:

"[T]here is no suggestion that some perverse plaintiff might sue (though none has) to compel *less* disclosure than the defendant is now supplying. The prospect of 'varying adjudications' is in a word imaginary."

In the present case the Court is of the opinion that there is no danger that the defendant will be faced with incompati-

2. See Advisory Committee's Note, 39 F.R.D. 98, 100 (1966).

ble standards of conduct and that such risks are "imaginary."

Moreover, since defendant is opposing the class action motion, it is apparently willing to accept any risk, no matter how imaginary, of such varying adjudications.[3]

Accordingly, a (b)(1)(A) class action is inappropriate.

Nor does subsection (b)(1)(B) apply to plaintiffs' case either. That subsection was not intended to remedy possible *stare decisis* or other precedential effect of the judgment on the merits of plaintiffs' claims. Otherwise, any action satisfying the requirements of Rule 23(a)(2) and (a)(3) would *a fortiori* qualify as a (b)(1)(B) class action and render superfluous the other subdivisions of 23(b). Instead, subsection (b)(1)(B) is aimed at those situations where the judgment as to one or a few members may dispose of the claims of others "as a practical matter." A class action is appropriate under this subsection, for example, where claims by numerous parties are made against a fund insufficient to satisfy all claims. See Advisory Committee's Note, 39 F.R.D. 98, 101. Following this reasoning, Judge Bauer found subsection (b)(1)(B) inapplicable in Goldman v. First National Bank of Chicago, 56 F.R.D. 587 (N.D.Ill., filed September 22, 1972).

In *Mullen* plaintiff has also invoked Rule 23(b)(2) on the ground that appropriate relief in this case may take the form of an injunction. This portion of Rule 23 provides for a class action if the requirements of 23(a) and (b)(2) are satisfied. This type of class action is inappropriate here for two reasons. First, plaintiffs are asking for money damages and this Court agrees with Judge Bauer in *Goldman* that a class action under (b)(2) is not appropriate where money damages have been demanded in addition to injunctive relief. Second, plaintiffs' claim is based in large part upon the omission of the word "payments" from defendant's disclosure of its method for computing finance charges. Since May, 1971 the billing statements, and since September, 1971 the credit applications, used by defendant have included the phraseology demanded by plaintiffs, and there is no suggestion of defendant's intention to do otherwise. Although the Court is not concerned with the merits in deciding this motion, the alleged violation having already been corrected by defendant, any injunctive or declaratory relief would be superfluous and inappropriate. Thus, these actions do not qualify as (b)(2) class actions.

Prior to the consideration of subsection (b)(3) and its application to the specific facts of this case, the extraordinary recovery sought by plaintiffs must be mentioned. In *Alsup* plaintiffs seek twice the amount of the finance charge computed on each account during the period of alleged improper disclosure, but in no event less than $100 or more than $1,000 per account. In *Mullen* plaintiff seeks $100 for each of the ten months during the period of alleged violation, or $1,000 per account. Consequently, the potential judgment against defendant if a class action were certified would be a minimum of $20,000,000 in *Alsup* and a maximum of $8,000,000,000 in *Mullen*. The latter recovery would amount to ten times defendant's net worth and more than 230 times its total net income. Even for willful and knowing violations,

---

3. In Kenney v. Landis Financial Group, Inc., 349 F.Supp. 939 (N.D.Iowa, 1972), a case dealing with the Truth in Lending Act, the Court stated (Opinion at page 951):

"By basing his class upon clause (A) of subdivision (b)(1) plaintiff places himself in the position of seeking to protect defendant against the risk of having to cope with incompatible standards caused by varying or inconsistent adjudications. Defendant who opposes class determination apparently is willing to accept that hazard. Thus, the court is of the view that the facts presented by this case do not warrant a determination that plaintiff may proceed as representative of a (b)(1)(A) class."

the maximum penalty imposed by the Truth in Lending Act is not more than $5,000. 15 U.S.C. § 1611.

With these observations in mind, we turn to the language of subsection (b)(3). The Court must find not only that common questions predominate, as they clearly do here, but also that a class action is superior to other means available for the prosecution of the claims herein. As noted by Judge Frankel in *Ratner, supra*, 54 F.R.D. 416:

> "Students of the Rule [Rule 23(b) (3)] have been led generally to recognize that its broad and open-ended terms call for the exercise of some considerable discretion of a pragmatic nature."

In following the dictates of this type of discretion, the great majority of the courts to consider the issue of class actions under the Truth in Lending Act to date have followed Judge Frankel in finding that a class action is not superior to the remedies provided for in the Act itself. Ratner v. Chemical Bank New York Trust Company, 54 F.R.D. 412 (S. D.N.Y.1972); Rogers v. Coburn Finance Corp. of DeKalb, 54 F.R.D. 417 (N.D. Ga. 1972); Gerlach v. Allstate Insurance Company, 338 F.Supp. 642 (S.D.Fla. 1972); Buford v. American Finance Company, 333 F.Supp. 1243 (N.D.Ga. 1971); Kenney v. Landis Financial Group, Inc., 349 F.Supp. 939 (N.D.Iowa, filed March 30, 1972); Shields v. The Valley National Bank of Arizona, 56 F.R.D. 448 (D. Ariz., filed April 24, 1972); Wilcox v. Commerce Bank, 55 F.R.D. 134 (D. Kansas, filed May 22, 1972); Grubb v. Dollar Loan Company, Civ.Nos. 15550 and 15976 (N.D.Ga., filed May 26, 1972); Shields v. First National Bank of Arizona, 56 F.R.D. 442 (D.Ariz., filed June 5, 1972); Kriger v. European Health Spa, Inc., 56 F. R.D. 104 (E.D.Wisc., filed July 18, 1972); Haynes v. Logan Furniture Mart, Inc., Civ.No. 70–C–1827 (N.D.Ill., filed September 20, 1972); and Goldman v. First National Bank of Chicago, 56 F.R.D. 587 (N.D.Ill., filed September 22, 1972).

The allowance of $100 minimum recovery, plus costs and attorneys' fees, 15 U.S.C. § 1640(a), was specifically designed by Congress to encourage each consumer to serve as a private attorney general in enforcing the Act. Actual damages need not be proved, and, indeed, in many instances there may well have been no monetary damages at all. Thus, since Congress has encouraged the consumer to enforce the Act through individual effort, the incentive of class action benefits is hardly necessary. Neither is the class action desirable as a deterrent to the potential offender nor as a means of denying unjust enrichment, in light of the "horrendous, possibly annihilating punishment" which could result from a $100 minimum recovery by every member of a class composed of thousands or even millions of customers. It is doubtful that any court would award such debilitating damages as are sought by plaintiffs here for a violation of a very new and technical statute. The maintenance of a (b)(3) class action would be incompatible with both the specific provisions for civil liability provided in the Act and the limitations placed on civil and criminal liability. For these reasons, the Court finds that a class action is not superior to other available methods for the fair and efficient adjudication of this controversy, and accordingly, this Court finds that these actions do not qualify under Rule 23 as class actions.

It is hereby ordered that plaintiffs' motions for an order deeming these actions maintainable as class actions shall be and they each are hereby denied.