Betty McDERMOTT, and Gerald Peters, Individually and on behalf of those similarly situated, Plaintiffs,

v.

Jerry HOLLANDER d/b/a King Educators and Consumers Credit Corp., Defendants.

Civ. A. No. 72-2062.

United States District Court, E. D. Louisiana.

June 28, 1973.

---

Okla Jones II, New Orleans, La., for plaintiffs.

Roy M. Lilly, Jr., Bogalusa, La., Thomas R. Blum, New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

The two plaintiffs seek to maintain a class action in this suit under the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq., more commonly known as the Truth-in-Lending Act. They contend that they each purchased a set of books from a salesman employed by Hollander on a time payment basis, signed a promissory note, and received a Truth-in-Lending disclosure representing that no financial charge was imposed. The disclosure statement represented the deferred payment price to be the same as the cash price and the annual interest percentage rate to be zero. The plaintiffs further contend that their notes were sold at a discount to Consumers Credit, pursuant to a prearranged plan, and that this discount represents a finance charge.[1]

Asserting pendent jurisdiction, the plaintiffs allege as a separate claim that the books were impliedly represented to be new and were in fact used.

Both defendants urge dismissal of the class action on the basis that the requisites of Rule 23, F.R.Civ.P., have not been satisfied. While the defendants challenge compliance with every requisite of Rule 23, most of the disputes can be quickly resolved.

## NUMEROSITY—ADEQUACY OF REPRESENTATION

The exact number of potential class members has not been ascertained, but there is evidence that it amounts to a sufficiently large number of persons to warrant a class action, but not more than a maximum of 300. The plaintiffs contend that their discovery indicates a class embracing 223 persons. By their diligent pursuit of discovery procedures and by the effective representation afforded by their counsel, the plaintiffs have shown that they can fairly and adequately protect the interests of the class. While they have sued in forma pauperis, they have obtained qualified counsel, and there is no requirement in Rule 23 that class action representation be permitted only to the nonindigent.

## TYPICALITY

The assertion that the plaintiffs in demanding recission of the transaction do not have a "claim that is typical" merely concerns the remedy that will be afforded, not the question whether there is a right to relief and whether the claim itself is typical. If the validity of the claim is established, different relief may be afforded various members of the class or, as discussed below, the entire question of relief may be reserved for individual actions, and class action status allowed only for the determination of rights. The plaintiffs' *claim* is typical; it is not necessary that the relief be universal.

The defendants' argument that "most of the members of the asserted class are happy with the merchandise purchased"

1. In a claim somewhat difficult to understand they also assert that the disclosure statements were incorrect because they "disclose" a default charge when none was provided for in the contract.

awaits proof just as does the plaintiffs' argument that many were sold merchandise that was misrepresented. Defendants' conclusion certainly does not follow from the lender's affidavit that few complaints have been received. If there are buyers who are happy, they may opt out of the class, or be shown in an appropriate manner to be satisfied.

## SUPÉRIORITY OF CLASS ACTION

The issue deserving fuller treatment is raised in connection with Rule 23(b)(3): whether the questions of law or fact common to the members of the class predominate over questions affecting only individual members and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

There can be no doubt that two questions are common to all members of the class: whether the discount allowed to Consumers Credit was a finance charge; and whether the cash price and the time price were in truth the same or whether this was a fiction adopted to conceal a time payment charge when there were to be few if any cash sales. These issues are not likely to splinter the class into individual trials. See Comment, Litigating the Anti-Trust Conspiracy Under Amended Rule 23, 1968, 54 Va.L.Rev. 314, 319. It will not require extended proof, if indeed it is disputed at all, whether there was the disclosure of a finance charge in each transaction. This can be determined, if disputed, simply by examining file copies of the statements. Similarly since form notes were used, there ought to be no difficulty in determining the provisions of the promissory notes.

It is true that, with respect to the pendent claim, some evidence with respect to individual class members will be necessary to determine whether Hollander or his salesmen promised new books and delivered used ones. But if a reasonable number of these claims can be proved (or disproved), then a general determination of rights can be made before addressing the issue of the manner of affording relief.

## CLASS ACTIONS UNDER TRUTH-IN-LENDING

The final, and most difficult issue, relates to whether a class action may be maintained under the Truth-in-Lending Act. While the court was engaged in rereading and considering the many district court decisions that have examined that question (most of which have resolved it by denying the right to a class action), the Third Circuit Court of Appeals rendered an opinion that goes to the heart of the problem. Katz v. Carte Blanche Corporation, 3 Cir. 1973, noted in 41 L.W. 2661.

The Third Circuit refused to set aside the district court's determination that a Truth-in-Lending suit involving a class with a potential of 800,000 members could proceed as a class action. It noted that the district court retains discretion to modify that determination at any time before a final decision on the merits. "This includes the discretion to decide later that class status was improperly granted and to dismiss that element of the proceeding."

With respect to the argument that some issues in the case would require consideration of individual claims, the Court said:

> Merely because the district court has decided to litigate one issue of this suit in a class action does not freeze it into disposing of the remaining issues through this procedural vehicle. Indeed, class proceedings may well be inappropriate for litigating these issues; the district court legitimately could conclude that class litigation would not prove the superior and most efficient method of adjudicating these subsidiary controversies.

The Court rejected the contention that a class action is not appropriate for re-

lief under the Truth-in-Lending Act. It said:

> Defendant's contention assumes a positive correlation between class litigation on the underlying legal issues posed by the Act and class litigation on the issues of damages. However, because of the earlier discussed structure of Rule 23, merely because class treatment has been afforded litigation of the underlying legal issues does not mean that the issue of damages must be similarly adjudicated. Although Congressional policy in the Act may militate against class enforcement of the damage provisions, we do not believe this alleged prohibition in any way affects our determination that the question of whether a violation of the Act's provisions occurred can be litigated in a class proceeding.

> First, there is no express proscription against class treatment of private suits prosecuted under the Act. In allowing private suits, Congress intended the enforcement programs of the responsible agencies under the Act to be supplemented by the efforts of 'private attorneys-general.' Thus, Congress manifested a desire for strong and broadscale enforcement of the Act.

> Second, and most importantly, Congress has expressed a strong interest in the efficient administration of justice, manifested in its authorization of the Federal Rules of Civil Procedure. Since the original enactment of that mandate, the succeeding revisions and streamlinings of the Federal Rules have been submitted to Congress after adoption by the Supreme Court and before implementation in the federal courts. Thus, Congress has expressly passed upon and implicitly approved the attempt in Rule 23 to utilize one consolidated proceeding, where appropriate, to dispose of multiple suits involving common elements.

Finally, the Court observed:

> If there is any implicit Congressional bar against class enforcement of the Act, it is as to the element of determining individual damages. However, we need not reach that question at this point. Should liability under the Act ultimately be found in the class proceeding, the district court then will have to consider whether the remaining issues are appropriate for disposition in class proceedings. In so doing, it first will have to determine, purely under Rule 23 criteria, whether the positive factors in favor of, or the negative factors against, allowing continued litigation by the class predominate.

> If the district court should ultimately determine under Rule 23 criteria that proof of membership and defendant's counterclaims are appropriate for class disposition, it next must consider whether Congress intended to bar absolutely class enforcement of the damage provisions of the Act. If it finds no absolute bar, it will have to determine the weight it will attach to those aspects in the Act which might undercut allowing the class as to litigating damages. Once it has assigned a weight to those factors, it must decide whether on balance, those factors, together with the negative factors under the Rule 23 criteria, outweigh the initial predominance of factors in favor of class adjudication of those remaining issues.

> If the court ultimately determines these remaining issues should be disposed of in independent suits, it has the power to dismiss the class element of the proceeding at that point. Each class member could then press his independent claim in any forum meeting venue requirements.

That authority suffices here. It accords with the policy declared, only a few days before, by the Fifth Circuit Court of Appeals, in Thomas v. Myers-

Dickson Furniture Company, 5 Cir. 1973, 479 F.2d 740:

The result we reach today is consistent with the statute's goal of creating a system of 'private attorney generals' who will be able to aid the effective enforcement of the Act. Section 1640 is intended to allow aggrieved consumers to participate in policing the Act, Ratner v. Chemical Bank, New York Trust Co., *supra,* and its language should be construed liberally in light of its broadly remedial purpose. *Id.* The domain of consumer credit with its allied commercial practices is no longer in the *laissez faire* era of *caveat emptor.* That doctrine is increasingly relegated to its proper place as a historical relic without modern application. The regulatory scheme forcefully expounds an emerging ethic of *'caveat vendor,'* and we will not strain to avoid giving effect to the Federal Consumer Credit Protection Act.

The present potential class does not constitute a group so large as to be unmanageable [2] nor entail enormous expense for notification to members of the class,[3] nor has it been shown to involve a possible judgment that would put the defendant out of business [4] or that would result in "horrendous possibly annihilating punishment." [5] Nor is this a case where, "upon the undisputed facts . . . it seems fair to conclude that plaintiff suffered no damages. at all . . . or . . . at most was damaged in a nominal amount." [6]

It is needless to cite the many district court decisions that have refused to permit a class action under the Truth-in-Lending Act, usually on the basis that such a proceeding "is not superior to other available methods for the fair and efficient adjudication of the controversy," F.R.Civ.P. Rule 23(b)(3).[7]

In Judge Frankel's seminal opinion in the *Ratner* case, denying a class action motion, he said, in words since frequently quoted:

Students of the Rule [23] have been led generally to recognize that its broad and open-ended terms call for the exercise of some considerable discretion of a pragmatic nature.

Discretion of a pragmatic nature distinguishes a case involving 223 potential claimants from one involving 130,000 claimants. Categorical and universal rules are not necessary. Thus, for example, some antitrust cases may qualify as class actions; others do not. See 3B Moore's Federal Practice, ¶ 23.01 [10.–3] at 23–30, and ¶ 23.45 [3] at 23–180 (2d ed. 1969). Similarly, some Truth-in-Lending cases may qualify; others may not. At this embryonic stage of the litigation, it is unnecessary to formulate any firm guidelines to indicate where the permissible scope of Truth-in-Lending class actions may begin or terminate. Indeed, any such attempt at setting strict parameters would frustrate the "considerable discretion of a pragmatic nature" called for under Rule 23.

The class action order is expressly made conditional and tentative, as Rule 23(c)(1) expressly contemplates, even without such specification by the Court. This determination may be "altered or amended" before the decision on the merits.

2. Gerlach v. Allstate Insurance Company, S.D.Fla.1972, 338 F.Supp. 642.

3. *Ibid.*

4. *Ibid.*

5. Ratner v. Chemical Bank, New York Trust Company, S.D.N.Y.1972, 54 F.R.D. 412.

6. *Ibid.*

7. The cases are collected in Rodriguez v. Family Publications Service, N.D.Calif. 1972, 57 F.R.D. 189 and in Alsup v. Montgomery Ward & Company, N.D.Calif. 1972, 57 F.R.D. 89.

At the moment, we need not consider the applicability or effect of the $100 minimum damage provision of the Truth-in-Lending Act. 15 U.S.C. § 1640(a). Some, perhaps all, of the plaintiffs may establish damages exceeding the $100 minimum. Judge Frankel noted, "[C]ases of that sort might be found to differ decisively from the present one." *Ratner, supra,* 54 F.R.D. at 416, note 7.

The court has considered the decisions of Judge Cassibry in Pennine v. Kirschman, E.D.La.1973, (denying a class action motion with respect to a class potentially containing thousands of claimants) and of Judge Boyle in Boggs v. Alto Trailer Sales Inc., E.D.La.1973, (denying the motion with respect to a class potentially containing 635 members). On May 14, 1973, Judge Cassibry certified his decision for appeal. Obviously the result on appeal may cause reconsideration of this ruling. But no great harm can come from permitting this action to proceed as a class action until that decision comes, even if it results in a later change with respect to the class determination.

## THE CLASS

Because suit was filed on August 2, 1972, there are members of the class whose claims are barred by the one year Statute of Limitations. 15 U.S.C. § 1640(e). The plaintiffs seek to represent only persons residing in the Eastern District of Louisiana. But it appears to be unwise to splint a relatively small class. There are only 223 potential members of the class, according to plaintiffs, if the one person residing out of the state and who is a potential member is included. Hence it appears appropriate to define the class as follows:

> All persons who have bought books from Jerry Hollander, doing business under the trade name King Educators, on or after the 2nd day of August, 1971, on a time payment basis whose note has been sold to Consumers Credit Corporation.

### Subclass

> All of the same persons who were told or led to believe they were being sold new books but were delivered used books.

The *class* need not be limited to those who contend they were told no finance charge would be involved, for this is not a prerequisite for admission to the class but a determinant of the right to relief.

The *subclass* will be permitted at least until preliminary inquiry yields further information. It will not be allowed as a separate, independent class for there is no jurisdiction over an action involving such a class or the claim made by it. The only basis to invoke the jurisdiction of a federal court is the Truth-in-Lending Act, and there is no basis for jurisdiction over persons who are not embraced within the class claiming violation of the Truth-in-Lending statute.

The plaintiffs' counsel will prepare a proposed class notice in simple, clear terms containing the manner of giving notice, within 10 days. He will then submit it to opposing counsel for objections and comments if any, to be submitted within 7 days after receipt of the proposed order. If the parties agree, the order will be submitted to the court; if they disagree, the court will hold a conference concerning its terms.