Daniel C. TUROFF et al., Plaintiffs,

v.

UNION OIL COMPANY OF CALI-
FORNIA, Defendant.

No. C 71-1205.

United States District Court,
N. D. Ohio, E. D.

Oct. 23, 1973.

Alan Arnold, Mark Schlachet, Lewis A. Zipkin, Zipkin & Green, Cleveland, Ohio, for plaintiffs.

Clayton Hoskins, Bricker, Evatt, Barton & Eckler, Columbus, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

The issue before the Court is the propriety of certifying a class action in a suit brought for violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (the "Act") and the regulations promulgated thereunder.

Plaintiff bases his suit entirely on the form billing statement sent by defendant to its customers from December 7, 1970, until the filing of this suit. In particular, plaintiff claims that defendant did not clearly disclose annual interest rates on the face of the statement in violation of 12 C.F.R. § 226.7(b) and (c), that defendant separated disclosures so as to confuse the customer in violation of 12 C.F.R. § 226.7(c), and that defendant added the following misleading information in violation of 12 C.F.R. § 226.6(c):

> Each month the choice is yours—you may pay either the new balance or not less than the minimum due. Payment due on receipt of statement.

Plaintiff requests damages under 15 U.S.C. § 1640 which provides liquidated damages in the minimum amount of $100 and the maximum of $1,000 for a violation of the Act.[1] Defendant has counterclaimed for money allegedly owed by certain members of the class.

Under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure the Court may certify this class action for damages only if, in addition to finding that the prerequisites of a class action are met, the Court is satisfied that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In this case the Court will determine whether a class action should ever be permitted in a case brought under the Truth in Lending Act and, if so, what guidelines should be used to determine when class treatment is superior under the Act.

### I. THE PER SE RULE

■ The first issue before the Court is whether it should adopt a ruling that

---

1. The statute provides:

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except

that the liability under this paragraph shall not be less than $100 nor greater than $1,-000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court. 15 U.S.C. § 1640.

a class action is never proper in a suit brought under the Truth in Lending Act. Those courts adopting such a ruling have based their decision on the following reasons: that class actions under the Act produce huge potential recoveries which are inconsistent with the enforcement provisions of the Act, that class actions under the Act are especially prone to misuse by attorneys because of the relatively small recovery by any given member of the class, and that class actions are not necessary to enforcement because attorneys fees are available in suits brought by individual plaintiffs under the Act. Each of these conclusions and the decisions adopting them will be more fully discussed below.

## A. Conflict between Class Action and Remedy Provisions of Act.

The Act provides for private enforcement against violations of the Act through a minimum recovery of $100 and a maximum recovery of $1,000 for each violation (the exact amount depending on the interest rate) and through a provision for attorneys' fees. 15 U.S.C. § 1640(a). Defendant contends that this enforcement scheme is a substantive part of the Act and that permitting class actions under the Act would alter the scheme by allowing greater recoveries than contemplated. It further argues that the use of a class action therefore would also violate the Rules Enabling Act, 28 U.S.C. § 2072, which provides that the Federal Rules of Civil Procedure should not modify substantive rights.

The leading case discussing the claimed conflict between the potential huge recovery under a class action and the philosophy of the Act is Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y.1972). In *Ratner* Judge Frankel called "persuasive" the argument that because the liquidated recovery would be $100 per class member, the certification of a class would result in a "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act." 54 F.R.D. at 416.

While Judge Frankel limited the application of his reasoning to the case before him, other courts have cited *Ratner* as prohibiting all class actions under the Act. Goldman v. The First National Bank of Chicago, 56 F.R.D. 587 (N.D. Ill.1972); Roth v. Community National Bank (N.D.Ohio 1973); Rodriguez v. Family Publications Service, Inc., 57 F.R.D. 189, 194 (C.D.Cal.1972). According to these courts, although the remedial provisions of the Act were intended to produce compliance by permitting suits by "private attorneys-general," the Act also limits recovery to a maximum of $1,000 and thus did not contemplate such large recoveries as would result under a class action or the *"in terrorem"* effect these potential recoveries would have on corporations.

Assuming that Judge Frankel's reasoning is sound, it still should not be extended to all class actions brought under the Act. To do so would require an assumption, first, that all suits are brought for technical or debatable violations; second, that a finding of liability would always produce an enormous recovery unrelated in size to the wrong inflicted; and, third that members of the proposed class would never benefit by the recovery. However, all these assumptions are open to valid attack in individual cases.

In addition, the Court is not convinced that class actions are necessarily inconsistent with the remedial provisions of the Act. Upon the Court's request the Federal Trade Commission, the enforcement agency for violations of the Act, filed a brief in this case as *amicus curiae*. It was the Commission's view, persuasively argued in its brief, that "in appropriate circumstances class actions are consistent with the enforcement scheme of the Truth in Lending Act." The Commission pointed out that Congress must have been aware of the Fed-

eral Rules of Civil Procedure when it enacted the Act but placed no comments on a class action proscription in the legislative history. The Commission further noted that the class action provisions may be helpful in assuring compliance with the Act. However, it urged the Court to consider the possibility of recoveries disproportionate to the violation prior to class certification:

> Problems arise when a technical or unintentional violation of the Act by a creditor can result in an enormous liability by virtue of $100 minimum recovery provided by the Act . . .

■ The Court agrees that the risk of inconsistency is one which, in each case, should be carefully examined in light of the Rules Enabling Act, 28 U.S.C. § 2072. See 3B Moore, Federal Practice ¶ 23.45 [3] at 23–806, n. 21; G. Hazard, "The Effect of the Class Action Device Upon Substantive Law," 58 F.R.D. 299, 307 (1973). At the same time, the possibility of a large recovery does not itself constitute such an inconsistency. In many fields, ranging from mortgage foreclosures to securities laws, the courts enforce recoveries which result in bankruptcy without indulging in the legislative function of ruling that the law permitting such a recovery could not have been intended to harm anyone to such a degree.[2] What should be considered regarding an inconsistency is instead whether the enforcement scheme of the Act renders a class action unnecessary for the just and efficient adjudication of the claim. This issue will be discussed further in Part I C below.

B. Potential Misuse.

Several cases have mentioned and law review articles have documented the misuse of class actions where the potential recovery for each member is small but the bulk recovery is large. Buford v. American Finance Co., 333 F.Supp. 1243,

1251 (N.D.Ga.1971); Shields v. Valley National Bank, 56 F.R.D. 448 (D.Aug. 1972); Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973). Note, "Class Actions Under the Truth-in-Lending Act," 87 Notre Dame Lawyer 1305, 1318, 1319 (1972); W. Simon, "Class Actions—Useful Tool or Engine of Destruction," 55 F.R.D. 375, 377 (1972). In essence, these authorities claim that large portions of the recovery are expended in administration of the recovery and claimed in legal fees and that the remaining amount per class member is so small that most class members do not bother claiming it, thus producing an additional boon presumably to counsel or to the named plaintiff whose financial interests are often comingled with those of his counsel. Shields v. Valley National Bank, 56 F.R.D. 448 (D.Ariz.1972).

■ The documentation of misuse should certainly not be ignored by this court or any other. At the same time, the Court recognizes that the attorney's interest in obtaining fees is one which may, if controlled, be a beneficial inference in the enforcement of the Act, which is violated in ways often not obvious to the consumer. Thus the courts should consider the potential for misuse and the means available to avoid misuse in each case. For example, the courts are empowered under 15 U.S.C. § 1640(a)(2) to limit the amount or percentage of attorneys' fees. Furthermore, the cost of administering the recovery in a given case compared with the size of the recovery may be considered by the Court in determining whether a class action would be superior. 3B Moore, Federal Practice ¶ 23.45 [3] at 23–803. Finally, the courts delay the fixing of total damages until they determine what amounts will be actually claimed by class members rather than fixing fluid recovery at the outset and permitting class members to claim from

---

2. A bill which would limit the recovery in a class action under the Act to the lesser of $100,000 or 1% of the creditor's net worth has been approved by the Senate Committee on Banking, Housing and Urban Affairs. Senate Bill 2101 (93rd Congr. 1973).

a fund. Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973).

For these reasons, the potential for misuse should not be used to deny all class actions but instead should be considered and controlled if possible in each case.

## C. Lack of Necessity.

A third reason given by those courts ruling that class actions should not be permitted in suits under the Act is that the class action provisions are unnecessary to achieve the purposes of the Act. The legislative history indicates that the purpose of the remedial provisions of a $100 minimum and attorneys' fees was to provide muscle to achieve compliance with the Act in addition to the FTC enforcement. The Senate Report accompanying the Senate bill, which ultimately passed in lieu of the House bill, stated:

> The enforcement of the bill would be accomplished largely through the institution of civil actions authorized under Section 7 of the bill. S.Rep.No. 392, 90th Cong., 1st Sess. 21 (1967).

Thus, in order to rule that class actions are unnecessary, the Court must also conclude that enforcement could be accomplished without resort to the class action. Since the Court does not have the expertise to make such a conclusion it requested that the FTC state in its *amicus* brief whether enforcement of the Act would be feasible without class actions. 3B Moore, Federal Practice ¶ 23.45 [3] at 23–810, nn. 33, 34; Dolgow v. Anderson, 43 F.R.D. 472, 481 n. 13 (E.D.N.Y.1968).

The FTC estimated that 1.2 million creditors were subject to the enforcement of the FTC under the Act. Since its resources are limited, the FTC has concentrated its regulatory activities on those companies doing a substantial volume of business. In its view, the civil enforcement envisioned by the Act is most necessary with respect to those creditors who either do a small volume of business or who operate primarily on a local level and who are not therefore reached through administrative enforcement procedures. With respect to such smaller businesses, the FTC stated that private class actions might aid enforcement of the statute.

 The Court is led to the conclusion that the decision as to whether a class action is necessary to achieve the purposes of the Act is one which must be answered in each case and is not susceptible to a broad *per se* rule. Katz v. Carte Blanche Corp., 53 F.R.D. 539 (W.D.Pa.1971); 3B Moore, Federal Practice ¶ 23.45 [3] at 23–802. Furthermore, the determination that the grievance is not one otherwise unredressable without a class certification, although significant, is not dispositive of the issue of whether a class should be certified, since the Court may also certify a class solely for efficiency reasons. See J. Weinstein, "Some Reflections on the 'Abusiveness' of Class Actions." 58 F.R. D. 299, 300 (1973).

## D. Conclusion.

 For these reasons, the Court will, like Judge Frankel, rule that the propriety of a class should be separately considered in each case before the Court. *Ratner, supra* 54 F.R.D. at 413. Cf. Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336 (10th Cir. 1973); Kroll v. Cities Service Oil Co., 352 F.Supp. 357, 360 (N.D.Ill.1972); Katz v. Carte Blanche, No. 72–1054, May 22, 1973 (3d Cir. 1973); en banc hearing granted June 20, 1973 (3d Cir. 1973). At the same time, the Court will specifically set out important considerations in applying Rule 23 to cases brought under the Truth in Lending Act. Initially, the Court will determine whether a class action is necessary to the enforcement of the Act and the legislative intent to use "private attorneys-general." Important factors in such a consideration are the need for injunctive relief, the size of the company as that relates to possible FTC enforcement, and the cost of prosecuting a suit under the Act. If enforcement is possible without class certification, the

Court will adopt a cautious approach to class certification in light of the potential for misuse which was discussed above. In particular, the Court will examine whether nearly every member of the class will receive the bulk of the recovery awarded to him and whether the class certification will aid in judicial disposition of claims for damages.

## II. PROPRIETY OF CLASS CERTIFICATION IN THIS CASE

Applying the guidelines listed above, the Court will examine this case on the basis of the affidavits submitted by the parties and legal arguments of counsel through briefs and oral argument. In its consideration, the Court will examine two potential classes one of which was defined in plaintiff's complaint and amended complaint and one of which was defined in his latest motion related to class certification.

The first proposed class was defined in the complaint and amended complaint as follows:

> . . . all the defendant's consumer customers to whom credit was extended or offered under the terms of an Open End Credit Plan as described in paragraphs 2 and 3 above on or after July 1, 1969, and who, pursuant to a periodic statement, paid less than the full balance due and thereby suffered the imposition of a finance charge within one year preceding the date of the filing of this complaint.

Since this suit was filed on December 7, 1971, and since the statute of limitations is one year, the period in question is between December 7, 1970 and December 7, 1971. Defendant estimated that the class, as proposed, would include over one million persons and argued that the class included many persons for whom the complaint did not state a claim for relief.

In a pre-trial memorandum filed on May 23, 1973, plaintiff sought to redefine the class as follows:

> All natural persons identified in Union Oil's monthly trial balances, for the month of December, 1971, as being within the billing cycle known as "e/R CYCLE 70/79", who, according to said monthly trial balances, incurred, a finance charge pursuant to a November billing statement transmitted to them in conjunction with Union's revolving credit plan.

The new class narrows the time frame to one month and the persons involved to one of the eighteen billing cycles used by defendant's computer. On the basis of discovery, plaintiff represented that the class as defined would include approximately 24,530 persons.

In determining whether the more limited proposed class will be permitted, the Court faces an initial problem regarding whether this, in itself, requires notice to the first class proposed under Rule 23(d)(2) and (e). A given billing cycle does not include all the customers in a given geographic area except to the extent that nine billing cycles include customers living in the eastern half of the United States and nine include customers living in the western half. Even these divisions are intermingled somewhat because a customer who changes his address is retained in his original billing cycle. The significance of choosing one such billing cycle is increased because of the one-year statute of limitations for the Truth in Lending Act, 15 U.S.C. § 1640. In other words, those persons not in the eighteenth billing cycle who had relied on plaintiff's first proposed class are now barred from asserting any claims arising prior to August, 1972. Wachtel v. West, 476 F.2d 1062 (6th Cir. 1973).

Although no official notice of this suit has been made, the Court is unable to determine how many persons nationally received actual notice of the suit and relied on this suit in failing to press their own claims. Thus, it would seem that, just as in the case of a settlement in an uncertified class, Rule 23 and the due

process clause would require notice to the entire original class and an opportunity to object and intervene in order to protect their rights. Yaffe v. Detroit Steel Corp., 50 F.R.D. 481 (D.C.Ill. 1970); Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 42 F.R.D. 324, 327 (D.C.Pa.1967); A. Miller, "Problems of Giving Notice in Class Actions," 58 F. R.D. 313, 330 (1973). Regardless of the class definition chosen by the Court, therefore, the mechanics required will be Rule 23(c)(2) notice to the class as defined in the complaint, a time period for objection, exclusion, or intervention, a trial, and finally distribution to either the class defined in the complaint or to that more recent class proposed plus any intervenors.

A. Necessity of Class Certification

■ In determining whether class certification is a necessary prerequisite either to the enforcement of the Truth in Lending Act or to the maintenance of a suit to vindicate plaintiff's claims, the Court has reviewed the need for injunctive or other equitable relief, the likelihood of administrative enforcement for this type of violation, and the cost of prosecuting separate suits.

There is presently no need for equitable relief. Defendant changed its billing statement in October, 1972, to remove the basis for plaintiff's complaint. The only remaining question is whether plaintiff and other customers are entitled to relief for the alleged violations from July 1, 1969, through December, 1971.

Furthermore, this is not the type of complaint which would or has escaped the notice of the Federal Trade Commission. In fact, during the period in question defendant corresponded with the Commission regarding its billing statement and made several changes pursuant to suggestions made by the Commission. Since defendant is one of the largest gasoline credit card companies in the nation, it is unlikely it will be ignored by the FTC because of the lack of enforcement resources.

Finally, this suit is not of such a highly technical nature as to be too expensive for the individual plaintiff "to litigate separately. The case involves primarily questions of law related to the billing statement. Thus it will not necessitate a prolonged trial or high legal costs which cannot be provided under the provisions for attorneys' fees in the Act. Cf. Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973) (Part VII of Opinion).

Since, for these reasons, there is no necessity in terms of enforcement to certify this case as a class action, the question of whether a class action would be a "superior" means of handling the suit depends primarily on whether it would be the most efficient means in terms of the individual class member and the judicial costs.

B. Relative Efficiency of Class or Nonclass Treatment

In determining the relative efficiency of class or nonclass treatment, the Court will examine the cost of administration as it relates to recovery which will reach the individual class member and the effect of class certification on judicial time. The plaintiff admits that none of the class would be entitled to a recovery of over $100. As a prerequisite to discussing such administrative costs relative to that recovery, it is important to note that Rule 23(c)(2) and the cases thereunder require individual notice to all "who can be identified through reasonable effort." Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973). Certainly, the law also requires that the class members should receive the recovery. *Eisen, supra* at 1015.

Initially, the Court must address the logistics problem and cost of administering notice and the recovery. In this regard, the Court has received counsel from plaintiff's computer expert during

pre-trial argument and an affidavit from defendant's computer expert.

The major problem in giving notice and sending the recovery to the entire class is that the customer list now maintained in defendant's computer is the current one and defendant has estimated that it does not include 30 per cent of those customers listed or billed between December, 1970, and December, 1971. In order to notify the missing thirty per cent, the notifier would be required to manually review computer print-outs from December, 1970, to date to determine which persons were removed from the billing list of December, 1970, to December, 1971. (Defendant removes these names through the use of "kill tapes." However, the "kill tapes" have now been destroyed, leaving only the print-outs as a record of the prior lists.[3]

An additional problem is presented because, even for those still retained on the customer list, the computer does not contain data on the dates on which billing statements were sent to customers during the period, a fact which must be established before determining whether a customer is in the class. (A customer would receive a billing statement during a given month only if there was a transaction other than a payment during the period.) This information could be obtained only manually through reference to each customer's file.

Neither party has attempted to estimate the cost of ascertaining all those persons on the customer list who received a billing statement during the period in question. Plaintiff has, however, estimated the cost of printing and mailing notices to 25,000 after these persons have been identified at 10 cents per person. Certainly, this would barely cover printing and mailing. Assuming conservatively that the initial notice is sent to 900,000 persons and that the recovery is sent only to 25,000

persons, the addressing and printing costs alone would be about $100,000. This cost is minor when compared to reviewing the print-outs of "kill tapes" to determine the old customer list, reviewing files to ascertain the dates of billing statements, ascertaining present addresses, and manually addressing envelopes for those not on the computer list. These costs could conceivably raise the administrative costs of notice and recovery to a substantial proportion of the recovery.

In addition to these costs, there may be additional costs to try this case on the merits. For example, defendant claims that a violation of 12 C.F.R. §§ 226.7(c)(1) can be shown only when the customer did not incur a finance charge in the preceding month since in those cases in which a charge has been incurred, the rate is recorded on the face of the billing statement. Obtaining the information required in the adjudication of this defense will again require costly reference to individual files.

This costly class action administration will be unlikely to save large amounts of judicial time. Without certification it is doubtful that numerous new suits will be required. It would in fact be rational for defendant to pay $100 to each person receiving a billing statement and asserting a claim thereon to avoid court and attorneys costs. Furthermore, even if others will file similar suits, the certification proposed of one billing cycle would decrease by only one-eighteenth the amount of new litigation.

Rather than increasing judicial efficiency, the class certification would create burdensome demands on court time. For example, regardless of counsel's agreement to handle inquiries, court personnel would unavoidably be involved in the questions and motions of absent class members. In addition, the Court may be faced with adjudicating numerous counterclaims for amounts owing on

3. Affidavit of Earl H. Davis, Coordinator, General Services—Retail Credit Card Operations, Union Oil Company of California.

accounts of class members. Under the rationale of Donson Stores, Inc. v. American Bakeries Co., 58 F.R.D. 485 (S.D.N.Y.1973), the counterclaims may not be asserted against *unspecified* class members. However, defendant may be entitled under Rule 13 of the Federal Rules of Civil Procedure to assert its counterclaims in this forum against individual class members, if the amounts owing arise out of the transaction here in issue. Cotchett v. Avis Rent a Car System, 56 F.R.D. 549 (S.D.N.Y.1972); Berkman v. Sinclair Oil Corp., 59 F.R.D. 602 (N.D.Ill.1973); Lah v. Shell Oil Co., 50 F.R.D. 198, 200 (S.D.Ohio 1970).

■ In light of the factors discussed above, the Court concludes that class certification in this case would result in a relatively small recovery for the individual class member while exposing the defendant to large administrative costs and requiring substantial segments of court time for the supervision of procedure. Class certification would clearly not be a superior method of adjudication in terms of efficiency.

### III. CONCLUSION

■ It is natural to seek *per se* rulings regarding those statutory causes of action for which class certification would be improper, since such rulings may be applied easily. However, the requirement of "superiority" under Rule 23(b)(3) is not susceptible to such rulings. On the contrary, the Rule requires a careful consideration of both necessity and efficiency in each suit.

Experience of other courts with suits brought under the Truth in Lending Act should not be ignored. The courts have recognized the potential offered by class certification in protecting consumers from violations which damage large numbers of people to only a small extent. Katz v. Carte Blanche Corp., No. 72–1054, May 22, 1973 (3d Cir. 1973), rehearing en banc granted June 20, 1973 (3d Cir. 1973). At the same time, they have recognized that the class action may be used in such a way as to involve the court in a costly administrative process which provide no real gain to consumers in general and will yield negligible benefit to the individual class member. Cf. Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973).

In this case, the Court has determined that the class certification is unnecessary to obtain the changes in the billing statement which have been sought. Indeed the changes have already been made. Furthermore, the enforcement potential of the Federal Trade Commission and of an individual plaintiff is sufficient to deter future violations. In addition, at this stage in the suit, it appears that the cost of administering notice and the recovery and adjudicating the counterclaims will be high while the benefit received by the class member will be small. Considering the small benefit which will accrue to the individual class member, the Court cannot justify the judicial time which would be required to supervise this suit. For these reasons the Court declines to certify the class at this point in the suit.

Plaintiff's motion for class certification is hearby denied.

It is so ordered.